And we now call prosecutorial misconduct Redux. United States of America versus Lorenzo Liburd. Good morning. This is Barbara Forthurst. I'm a federal defender on behalf of the intelligence, the library. We would ask the court at this time to be able to reserve five minutes of our time. If you would step to the microphone, please. It's Mr. McKelvin. Yes, judge. Just so we're getting it into the system. Thank you, sir. My fault there. If I may, then, Thurston McKelvin, federal defender, Virgin Islands, on behalf of the appellate. And we would ask at this time that we be permitted to reserve five minutes for rebuttal. Again, good morning to this honorable court. We would think that even though we're here for important matters, as always, the facts regarding the one issue that this honorable court asked us to address or turn our attention to are relatively few. And for the most part, I would think really not in dispute. The appellant, through his moving documents, has suggested that the government has engaged in prosecutory misconduct, deliberate or otherwise, to the defendant's prejudice by not turning over, in a timely fashion, statements that the government knew of and or had in its possession. And upon request, these statements were not turned over to the defendant, but they found themselves in the government's case in chief. You seem to indicate in your opening brief, and the government jumps on this, you seem to say that the failure to reveal, and I'll use the shorthand you adopted, the cheese statement, was not a discovery violation. Is that in fact the defense concession here, that under Rule 16A, since this was a spontaneous statement, it was not a statement that had to be turned over by the United States? It was not in response to interrogation. You've conceded, haven't you, in your brief, that it at least probably was not? To the extent that I am able to do so at this time, sir, considering that I did not try the case and or write the brief for that matter, I would respectfully move back from the suggestion that the cheese statement was not encompassed or is not encompassed under Rule 16, given that, at least from my purview of things, it doesn't seem to be clear from the record as to whether or not that statement was in response to interrogation or not. If we think of the record, at least as I have read it and interpreted, there was a go-between after the agent had asked Mr. Liburd, or he had supposedly made the spontaneous utterance, there's something in the bag, then we go on into the record and we find that the agent is being asked, well, how did you find out, etc., about the cheese statement? And what we get is from the passenger, from the passenger. The cheese statement supposedly came first, right? In time sequence? No, sir. Excuse me, Judge, as I understand it, the cheese statement was second in time. The first statement is when the appellant allegedly utters, there's something in the bag. Really, I thought the I have a cheese comment came first and the there's something in the bag came later when he was pulled out of line after having gone through all the previous searches. That was my impression as well. Might as well. I have misread the record just because I surely thought that it was before. They were just asked about, he made this innocuous statement, there's something in the bag, and then when inquired as to what it was, they said, well, it's cheese. Because of that difference in sequence, that might explain why your colleague, whoever it was who actually did write the brief, said on page 11, quote, Mr. Liburd recognizes that the government's withholding of the cheese statement may not have violated the Federal Rule of Criminal Procedure 16A1A because Mr. Liburd was not being interrogated when he made the cheese statement. I don't know any other way to read that than a concession that there was not a discovery violation at least after the cheese statement. And that's what your brief says. So let's assume for argument purposes that it was not a violation of Rule 16. Does that matter to your position? I do not think it matters to my position, Judge, given that one Rule 16, I would think it'd be a correct statement of the law, does not set out the total parameters of discovery or those things that can be requested from the government. Well, aside from discovery, don't we have here in the course of the prosecutor's representation of the government an outright promise made prior to trial? I don't intend to rely on any statement that Mr. Liburd made. And your client was entitled to rely on that, right? Absolutely, sir. I trust that nothing that I've said or suggested at this point would suggest that we're stepping back from that because that's exactly what we feel. No, what argument suggested was that the defense was reversing their position relative to Rule 16. And I think it's safe to say that this panel relies on what is in the briefs. And we came into argument assuming that the parties stood on what was in the briefs. So if there is a concession from the defense that the Rule 16 argument is either not operable or not very strong, then we need to look beyond that. And in looking beyond that, what we see is a record that demonstrates the broad statement of the prosecutor that he's not going to rely on any statement that Mr. Liburd made. And then the prosecutor's further conduct once trial gets started in invoking such a statement in his opening. And then beyond that, after making another promise, asking a witness a question that evokes that statement. Isn't that what happened here? And isn't that what your case is about? That is correct, sir. That is indeed essentially what our case, our position on behalf of the appellate is all about. And with the bottom line being, of course, we're believing firmly that the conduct engaged by the government as rightly pronounced by this court summarized, it worked to the advantage of this defendant in terms of his due process rights under the Constitution. Worked to the advantage? Worked to the disadvantage. Excuse me, disadvantage. Excuse I. So in relying upon this, was trial strategy on the part of the defense impacted in some way? Was there prejudice to the defendant in having the prosecutor make such a promise? Indeed, Judge. In the first instance, once that was made clear and we relied upon it, thoughts and or areas of interest and or direction by the appellant simply foregone. There was no need to be concerned with it at any point. Once the concession had been made by the government, thoughts of pleading the case and not going to trial, of course, did not factor into our thought processes moving forward. What I'm asking is, did the introduction of the cheese statement undermine substantially Mr. Liburd's defense strategy? It did. In what way? In the sense that, as I understand the record and counsel, former assistant federal public defender, the crust of our case was that Mr. Liburd had passed through security. If he said it was cheese, that's the only thing that he knew it to be. And he had gone, he was sitting down thinking that the whole process was over. He was brought back. Now they're saying that what he thought to be cheese turns out to be cocaine. His suggestion is that the bags now had left his possession and possession of other persons and or out of his sight. Then at trial, we're told that apparently he made a statement that it was cheese, and the cheese turns out to be cocaine. But the government kept from him the fact that they were ever going to use, obviously, the cheese statement to show some suggestion that this man was just trying to give the government a 649. It was cocaine that he was having. I think he did undermine his trial strategies that he had or knew them to be at that point. And then they sprung this on him more or less on the day of trial, if you will. And I will respectfully submit most certainly not enough time. The only thing we could do is move for mistrial, which we did. That was denied. Mr. McKelvin, let me ask you, if I may, to focus on the part of your misconduct argument that is the where is the evidence refraining and closing argument. In the answering brief submitted by the government, the assertion is made that that's just that wasn't any attempt, nor did it have the effect of indicating a shift in the burden of proof. It was just showing holes in the defense case. What's your response to that? My response, judges, is that it has the same effect that is a shifting of the burden, the suggestion to the trial of fact that there was a responsibility on the defendant's part or the appellant's part to produce evidence, which we know full well is not the case. Why do you say that? What's your reasoning for that conclusion? That there isn't that the burden never shifts to the defendant unless that's true. I'm understand. I'm with you on that. I'm trying to get you to say is why? What is it that was said that logically would have confused the jury into thinking the very what specific statement in the argument? The very fact that the government and in its argument continuously says that I have it in this material over here, but the continuously refers the the trial of fact to the fact that the defense is not offering any evidence essentially to rebut the government's case. That's a conclusion. That's that's not a specific statement. Those are not specific words spoken by the prosecutor in his closing, the specific words spoken by the prosecution. Where is the evidence? Where is the evidence? I think it is reasonable to conclude that the prosecutor at that time is not talking about where is the evidence from us against our own case? He's speaking of the lack of the appellate to produce evidence against his case with the statement. For example, you know, it's quite easy, easy to stand here for the defense to get up here without any evidence. That would be one example that you would muster to suggest that there was an improper shifting or suggestion of the shifting of the burden of proof. That is correct. Thank you. Thank you very much. Mr. McKelvin, Mr. Potter. Good morning. May please the court. Edward Potter on behalf of the United States. Clearly, the court has to review the issue of the chief statement. Mr. Potter, what happened here? I mean, you made a statement, you went off the rails. Can you explain yourself? Yes, I can, Your Honor. The statement is made in the context of the suppression hearing. Before the court, the issue before the court, basically one statement before the court at the suppression hearing. And that was the statement of, there is something in my bag that allegedly the defendant made when he was stopped and pulled out of the line at gate six. We argued that point before the court. The prosecutor conceded, indicated to the court, we have no intention of using that statement at trial. And Mr. Potter, didn't the district court then, because of that representation by the prosecutor, declined to rule on the suppression motion? Yes. In complete reliance upon that, the good faith of the prosecutor, there was no ruling then made on the suppression motion. Isn't that correct? That's correct, Your Honor. And the government did not use that statement at trial. You went further. But you didn't just say, we won't use that statement. You said, we don't intend to rely on any statement by the defendant. That's the quote, right? I thought that was, in fact, I'm quite sure that was the promise that was made. Page 49 of the appendix. I don't intend to rely on any statement that Mr. Liburd made. That is the statement. That's pretty broad, isn't it? It is. And that is not what then transpired. No, it's not. So why is that not what transpired? Prior to the government making that statement, the court inquired, does the government intend to rely on the statement regarding there's nothing in my bag? The response to that was, if I can paraphrase, no, Your Honor, the government does not intend to rely on that statement. And the court continued to, and the government continued to say, any pre-Miranda statement. Well, we don't have to guess what you said. We've got it right here. It's lines 4 through 10 on page 15 of the transcript, that appendix 49. Your answer is, no, Your Honor. Any statement that Mr. Liburd may have made was made prior to any Miranda warnings being given. So, says the court, you don't intend to rely on that or present that statement? And then your response is, I don't intend to rely on any statement that Mr. Liburd made. I mean, I don't... It covers the field, Mr. Covington. I don't understand how to read that as anything other than an affirmative representation that you will not be introducing evidence of statements from Mr. Liburd in your case. Which is not what happens, right? That's true. But, again, I must always go back to the contents of this question. Well, may we go back to my question? Yes. Which, a few moments ago, was, given the fact that that's what was said, that's what the transcript demonstrates, why did events not unfold consistent with that representation? Any statement. All statements. At the suppression hearing, the government was not aware of any other statement that Mr. Liburd had made. Any other statement would be included in any statement by Mr. Liburd, right? Whether the government knew it or didn't know about it. That's true. So, assuming, if you will, or as you suggest, that this statement comes to the government's attention later on, was there not an obligation, then, on the part of the government to come back, both to the defense and to the court, and say, I know I made this representation, but I no longer wish to live by this representation, because this information, the cheese statement, has come to our attention? In hindsight, Your Honor, again, looking back at the contents of the statement, the contents of what occurred at the suppression hearing, this cheese statement, let me back up a little bit more. At the time that Mr. Liburd made his initial, there's something in my bag, statement, he had been pulled out of a line, he had been put at a desk, he was sitting there, he had not been mirandized, he had not been arrested, he was technically in custody, I think. And the focus, the focus of the government at that time was, he's here, he's sitting. Whatever, he's not in custody, he hasn't been mirandized. Anything that he said, at this point, the government had no idea that he had said anything. I'm not sure how this is responsive to the issue, though, because the question isn't really about where your focus was at that time. The question that we're wrestling with right now is that a representation was made that was broad enough to say, and me, in fact, the only thing it can mean is, I'm not going to rely on anything Mr. Liburd said. But you go to trial and you don't. Let's leave aside your statements at the suppression hearing. Okay. When you raise it in the opening statement and it's immediately objected, and there's a colloquy with the court, at that point you say, there may be a mishearing of what I said in my opening, and then say you have no intention of introducing anything that this defendant said. That's a quote. No intention of introducing anything that this defendant said, which certainly sounds like a reaffirmation of the promise that you're not going to use any statement, and yet about a half hour later Mr. Gruby's on the stand and you're eliciting the information about what Mr. Liburd said. So even if we leave the suppression hearing piece out, we're at trial, you say I'm not going to do it, and then you immediately do it. So I'm left to ask what Judge Guerra said. You went off the rails. Can you explain what happened? In my minor trial, in respect to this statement, it was not clear to me at the time that I had an obligation under Rule 16 to turn this information over. Again, error or not error, it was not clear to me that I had this obligation. My context of- How does that answer my question? My question is it doesn't have anything to do with Rule 16. It has to do with an affirmative representation that you made to the court and defense counsel standing at sidebar, independent of anything that 16A might have said. The statement, quote, I have no intention of introducing anything that this defendant said, unquote. And then about a half hour later you're asking Mr. Gruby questions to elicit this. So leave 16 out of it because we're not- We're talking about your affirmative representation. How could you make that representation and then break that representation? My only defense to that, Your Honor, would be that if the record shows that I did in fact break that representation, it was clearly not something deliberate. It was done probably just in the heat of a trial. It was not clear to me, again, at that point that this was not something that I could elicit from this defendant, from this witness who would understand. Was it something that was done to somehow get advantage over Mr. Liburd? No, because clearly even if I had in fact informed the defendant prior to trial of this statement, that statement would still have come in at trial. Mr. Potter, I speak only for myself when I say this, but I feel impelled to say it. I've been around a long time. I've been a judge for more than 25 years, and 18 of those years was spent as a trial judge. And eight years before that as a trial lawyer. This is about the most egregious example of prosecutorial misconduct in the courtroom that I've seen. I look at the transcript, and it says what it says. I suppose I would not be nearly as troubled if I were looking at this transcript and saw the statement made pretrial and the reliance that the court made upon that representation in not deciding the suppression motion, and the assumed reliance on the part of the defense thereafter. But then we fast forward to the trial, and as Judge Jordan has just asked, we have contrary to the representation made in the pretrial proceeding, a statement made in the opening that you gave, an objection, and what seems to be the voluntary representation. At page 149 of the appendix, I have no intention of introducing anything. Again, that very inclusive term, anything that this defendant said, and within a very short period of time, a questioning of Officer Gruby that elicits a statement that any reasonable reading of this transcript would have suggested you had no intention of introducing. Off the rails, yes, quite frankly, my mind boggles when I read this transcript, and I cannot understand how it could have occurred. Let me review the transcript. It's clear that your representation as to what I told the court is correct. The court had an opportunity to address this issue, this misconduct issue. The court did not feel that I in any way was attempting to mislead the court. I submit again here today that it was not my intention to in any way mislead the court. The statement of Mr. Libor regarding the cheese, it was my intention and my understanding at that point in the trial that this spontaneous comment regarding cheese, this is my view, and my limited view as a U.S. attorney at that time that that was in fact a statement. I mean, what I don't get is, as you laid out in the brief, there is a whole lot of evidence here. I'm not sure why you felt compelled to go to the cheese statement, but setting that aside, speak for a minute, if you would, to the defense assertion that independent of the now infamous cheese statement, the closing argument represented misconduct because there were repeated statements. They list six of them specifically, four of which they actually objected to at trial, where you talk about where's the evidence, where's there's no evidence, where's the evidence, and their assertion is this implied to the jury repeatedly that the defense had an obligation to produce evidence, which of course we know was not the case. So what's your response to that? The where's the evidence was in response to comments made by the defense at his closing argument. And he was challenging. He was pointing an accusatory finger at the prosecutor, basically saying, suggesting to the jury that the prosecutor was somehow hiding evidence, that the prosecutor was to turn over certain evidence, in this case certain tape recordings, videotape recordings, and somehow the prosecutor withheld that information. And my refrain to the jury was, well, where is the evidence of that? Where's the evidence that suggests to you from what you've seen, under witness stand, that the government did anything wrong, did anything unhanded in this trial? That was where is the evidence. It wasn't where, it wasn't pointed at the defense, that the defendant had an opportunity to present evidence at this trial. It was where is the evidence that the government did anything wrong in this trial? And given that, again, the mountain of evidence against the defendant was overwhelming. And I understand the position of at least Judge Smith in stating that my actions were somehow prosecutorial misconduct. But there was no need, there was no need for the government, there was no need for me to try and pull something over on this defendant. There was no need for that. Frankly, personally, I don't think I did. I may have misspoke in the heat of the trial. Trials aren't perfect. I may have misstepped. But the evidence was so overwhelming against this defendant that I did not go into court with any preset notion that I am going to pull a fast one. That's what's in the case. And again, even if we had thrown over the statement to the defendant, the processing trial would have been the same thing. The result would have been the same. Because if you take the issue of the cheese out of the trial, Mr. Lightwood still had absolutely no defense. There was nothing in the record that showed that he had any defense whatsoever when the two bricks of cocaine were removed from his bag. So there was no need for the government to try and pull a fast one. Well, that's obviously what has perplexed us all. All right. We'll hear rebuttal then from Mr. McKelvin. Mr. McKelvin, thank you. Thank you, Your Honor. As far as the vote is concerned, with respect to my learning counsel's comments, we would ask the court to be reminded that not in this instance does and or should the matter turn on whether or not the government was acting in bad faith or not. I don't think that is the standard that this Honorable Court should be looking at when you deliberate on this point. Other than that, I would respectfully withdraw my request for further rebuttal unless this Honorable Court has questions directly to me. I don't think so. Mr. McKelvin, thank you. Thank you, sir. Thank you very much. All right. We will thank counsel. We will take this troublesome matter under advisement. That concludes the arguments for this morning. We would ask the court to close the proceedings. Please rise. This court stands adjourned until Monday, May 10th, 2010.